IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**CITIZENS TRUST BANK,**               )

    **PLAINTIFF,**                         )

**VS.**                                          )          2:11-cv-4179-JHH

**RIDGECREST HOMES, LLC; and,**   )
**JOHN H. STREET, JR.,**

                                               )

    **DEFENDANTS.**

### MEMORANDUM OPINION

The court has before it the March 19, 2013 Motion (Doc. #39) for Summary Judgment filed by Plaintiff Citizens Trust Bank. Pursuant to the court's March 27, 2013 order (Doc. # 44), the Motion for Summary Judgment was deemed submitted, without oral argument, on May 14, 2013. After careful consideration of the briefs and admissible evidence, the Motion (Doc. #39) is due to be granted in part and denied in part for the following reasons.

**I.  Relevant Procedural History**

Plaintiff Citizens Trust Bank ("Citizens") commenced the instant action on December 13, 2011 by filing a Complaint (Doc. #1) in this court alleging breach of

contract and breach of guaranty.[1] Defendants Ridgecrest Homes, LLC ("Ridgecrest Homes") and John H. Street's Fourth Amended Answer (Doc. #29) was filed on October 1, 2012, which included a Counterclaim against Citizens for fraud in the inducement. (Id.) On March 19, 2013, Citizens filed a Motion (Doc. #39) for Summary Judgment as to its Complaint as well as the Counterclaim, contending that it is entitled to judgment as a matter of law as to both.

The parties have briefed and submitted evidence in support of their respective positions on summary judgment. On March 19, 20013, Citizens filed a brief (Doc. #40) and evidence[2] (Doc. # 41) in support of its own Motion (Doc. #39) for Summary Judgment. Defendants filed their response and evidence[3] (Doc. # 48) in opposition to the Motion for Summary Judgment on May 7, 2013. On May 14, 2013, Citizens

---

[1] The court notes that Plaintiff filed an Amended Complaint (Doc. #45) properly alleging diversity jurisdiction on March 27, 2013.

[2] Citizens filed the following evidence in support of summary judgment: deposition of John H. Street, Jr.; Lots or Other Unimproved Land Sales Contract; November 30, 2006 Promissory Note; Mortgage and Security Agreement; Affidavit of Daniel J. Hughlett; Guaranty; May 19, 2009 Promissory Note; August 10, 2010 Promissory Note; Plaintiff's Complaint; Defendants' Fourth Amended and Restated Answer and Counterclaim; Letter from Street to Citizens; May 9, 2009 e-mail sent by Street.

[3] Defendants filed the following evidence in opposition to summary judgment: deposition of John H. Street, Jr.; Lots or Other Unimproved Land Sales Contract; August 2011 e-mails between Harry Williams and Street.

filed a Response and evidence[4] (Doc. #49) in reply to Defendants' opposition to its Motion (Doc. #39) for Summary Judgment. All briefs and evidence have been considered in deciding the instant Motion for Summary Judgment.

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000)  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. See id. at 324.

---

[4] Citizens filed the following evidence in reply: April 29, 2010-May 3, 2010 e-mails between Williams and Street, among others.

The substantive law will identify which facts are material and which are irrelevant. See Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. See Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. See <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer

5

rest on mere allegations, but must set forth evidence of specific facts. See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

**III. Material Undisputed Facts**

Defendant Street is an educated business man who has a degree in finance from the University of Alabama. (Street Dep. at 24.) He also has a real estate broker's license, is a licensed homebuilder, and performs real estate appraisals. (Id. at 24-27.) In 2006, Defendant Street was developing an eleven hundred lot subdivision called Shiloh Creek in Shelby County, Alabama. (Street Dep. at 45-47.) While he was developing these lots in Shiloh Creek, Street was approached by a real estate agent regarding the purchase of twenty-seven lots in the Ridgecrest subdivision, which was three hundred feet from the Shiloh Creek subdivision. (Id.) Those 27 lots were owned by Steve Rockco, a funeral home director. (Id.)

The agent told Street that Rockco was "in trouble" and that he was not able to make the subdivision work. (Id. at 47-48.) Initially, Street was not interested in purchasing the lots, but the agent was persistent and told Street that if he purchased the lots in Ridgecrest, she would sell the houses on them, once built. (Id. at 46.) The

agent also told Street that she had spoken with the bank that held the mortgage[5] on the lots (Citizens) and that the bank had expressed interest in speaking with him. (Id. at 47.)  After several more discussions with the real estate agent, Street agreed to meet with Citizens regarding the Ridgecrest subdivision lots.  (Id. at 52.)

In the fall of 2006, Street met with Citizen's Alabama President, Bob Nesbitt. (Id.)  According to Street, during this initial meeting, Nesbitt informed him that he was not sure why the bank made a loan to a funeral home director to develop property, but that the bank "would like to get into the construction loan business" because it was highly profitable.  (Id. at 56.)  However, Nesbitt stated that Citizens would need a positive showing on the subdivision before it would be willing to get into the construction loan business.  (Id.)  In response, Street told Nesbitt that he did not buy property unless he had a commitment for construction financing for the lots and that he would not buy property with the "speculation of finding financing elsewhere." (Id.)  According to Street, Nesbitt indicated that he would going to speak to Citizen's board about going forward with the construction loans.  (Id. at 59.)

Specifically, Street testified about the agreement regarding the construction loans as follows: "[t]he premise of the agreement was that [Citizens] would do the

---

[5] Rockco had a loan and mortgage with Citizens, secured by the 27 lots.  (Street Dep. at 48.)

construction loans as soon as [Street] did an initial amount to get the loan back into a proper appearance with their regulators and their board." (Id. at 92.) Specifically, Street testified that he "had to close [construction loans of] five lots in order to do the subsequent construction financing" from Citizens. (Id. at 67.) Street further testified that Nesbitt told him that Citizens would make the construction loans for the remaining lots. (Id. at 110.)

Additionally, Street testified that Nesbitt told Street that "he was going to have to rearrange [the purchase of the lots] to be an assumption" of Rockco's loan because "it was positive for the regulators" and would be necessary "for them to do the construction financing." (Id. at 69.) Put another way, Street testified that the deal was that he would assume "Rockco's loan rather than [Citizens] setting up a new loan so that it would be the existing loan that had been reduced and, therefore, the board would go ahead and make the [construction] loans." (Id. at 93.) According to Street, Nesbitt required that Street close on these construction loans of the five lots with other lenders within thirty days of the closing with Citizens. (Id.) Street closed on the five construction loans within approximately six days. (Id. at 69, 75.)

As a result of these conversations, on October 31, 2006, Street entered into a Lots or Other Unimproved Land Sales Contract, on behalf of Radar Properties, LLC, with J. Rock Development, LLC, Steve Rockco's company, for the purchase of the

8

27 lots in the Ridgecrest subdivision.[6] (Pl. Exh. B.) Street handwrote the following on the Sales Contract:

> Purchaser agrees to arrange the financing and purchase of five of these lots through construction loans prior to the assumption of the Citizen's Trust Bank loan in the amount of $440,000 on the 22 lots remaining. Time frame is set in order to facilitate construction loan documentation. Contingent on Citizen Bank Assumption.

(Id.) Street testified that the portion added words did not contain all of Nesbitt's representations to him about construction financing, and Street testified that his entire agreement with the bank, including all conditions that led him to purchase the property, was not reduced to writing. (Street Dep. at 64-65, 83-84.) Specifically, Street testified that another "important term of [his] relationship with the bank" that was not reduced to writing was "[t]hat they would do the construction loans later." (Id. at 85.) None of the alleged oral promises regarding the construction loans made by Nesbitt were reduced to writing. (Id. at 120.)

On November 30, 2006, Ridgecrest Homes executed a Promissory Note and Mortgage in favor of Citizens in the principal amount of $537,500.00. (Street Dep. at 77, 81; Pl. Exhs. C & D.) Street, as a member of Ridgecrest Homes, signed the Promissory Note and Mortgage. (Street Dep. at 77, 81.) The Promissory Note

---

[6] The Sales Contract was assigned to Ridgecrest Homes. (Id. at 74.)

9

provides that Ridgecrest Homes would make regular interest only payments on the outstanding principal each month until the maturity date, as well as a mandatory principal payment of $100,000 on or before December 30, 2006. (Pl. Exh. C at 1.) The maturity date of the Promissory Note was November 30, 2008. (Id.) Ridgecrest Homes agreed to pay late fees/charges on any payment of principal and interest not paid within ten dates of the due date and attorney's fees and costs incurred by Citizens in any effort to collect or enforce the obligations under the Promissory Note. (Id. at 1-2.)

Additionally, on November 30, 2006, Street executed an unlimited Guaranty in favor of Citizens. (Street Dep. at 86-89; Pl. Exh. F.) In the Guaranty, Street "irrevocably [and] unconditionally . . . guarantee[d] to the Lender the full payment and performance of . . . all of Borrower's present and future indebtedness and obligations under the Note and other Loan Documents, and under all modifications, renewals and extensions of those instruments." (Pl. Exh. F at 1-2.) Street also agreed to pay all attorney's fees and costs incurred by Citizens in any effort to collect or enforce any obligation under the Guaranty. (Id. at 2.) Both the Promissory Note and Guaranty provide that they shall be governed by and construed in accordance with the laws of the state of Alabama. (Pl. Exh. C at 3; Pl. Exh. F. at 4; Pl. Exh. G at 3; Pl. Exh. H at 3.)

After the execution of the Promissory Note and Guaranty, Street secured construction loans from another bank for five lots and began the construction of the homes in the Ridgecrest subdivision. (Street Dep. at 112-14.) In approximately April of 2007, as he was finishing up on the first five houses, Street requested construction financing from Citizens for the remaining twenty-two lots. (Id. at 113-15.) Street did not get the loans from Citizens and went to another bank and secured loans for two additional lots. (Id. at 112-13.) In the end, Citizens never financed any construction loans. Nesbitt continued to maintain that he was trying to make the construction loans happen until he left Citizens in late 2009. (Id. at 122.) Street testified as follows regarding the sincerity of alleged promises made by Nesbitt:

> I think Mr. Nesbitt felt like he was not lying to me when he told me that they would do this [make the construction loans] to begin with. I think it was later in the process before whoever higher up that made those decisions decided they weren't going into construction loans.

(Id. at 116.)

Over the years that followed, Citizens modified the Promissory Note to change the payment amount and extend the maturity date. (Pl. Exhs. G & H; Street Dep. at 89-90, 105.) The final modification extended the maturity date to August 10, 2011 and provided for interest only payments each month until the maturity date and the entire remaining principal balance, plus accrued interest, by the maturity date. (Pl.

Exh. H.) The total amount due and owing to Citizens on August 10, 2010 (as stated in the modified Promissory Note) was $397,224.99. (Id.; Street Dep. at 108.)

Ridgecrest Homes did not satisfy the Promissory Note by its final maturity date of August 10, 2011. (Street Dep. at 108, 110; Hughlett Aff.) Ridgecrest Homes did not pay any portion of the amount stated as due and owing in the modified Promissory Note. (Street Dep. at 108-10.)

As a result of the lack of payment, Citizens filed the instant lawsuit on December 13, 2011, alleging breach of contract and breach of guaranty. (Compl.) As of March 15, 2013, the total amount unpaid due and owing to Citizens on the loan made to Ridgecrest Homes is $326,040.49, consisting of (a) $247,780.24 in principal; (b) $39,523.77 in late fee charges; and (c) $38,736.48 in interest. (Hughlett Aff.) Interest is currently accruing on the Promissory Note from and after March 15, 2013 at a per diem rate of $39.57. (Id.)

## IV. Discussion

Citizens contends that it is entitled to summary judgment on its claim of breach of contract and breach of guaranty. Citizens also contends that Defendants cannot establish or meet their required burden on proof on their fraud claim, and, therefore, Citizens is entitled to summary judgment as to this claim as well. The court agrees with Citizens as to the fraud claim, but questions of fact remain regarding the breach

of contract and breach of guaranty claims. The court discusses each claim separately below.

**A.  Plaintiff's Claims of Breach of Contract and Breach of Guaranty**

To prevail on a breach of contract claim under Alabama law, a plaintiff must establish the following four elements: (1) the existence of a valid contract biding the parties in the action; (2) its own performance under the contract; (3) the defendants's non-performance; and (4) damages.  Ex parte American Heritage Life Ins. Co., 46 So.3d 474, 477-78 (Ala.2010) (citing Congress Life Ins. Co. v. Barstow, 799 So.2d 931, 937 (Ala.2001)); Shaffer v. Regions Fin. Corp., 29 So.3d 872, 880 (Ala.2009) (quoting Reynolds Metals Co. v. Hill, 825 So.2d 100, 105 (Ala.2002)).   It is undisputed that a valid contract existed, that Defendants did not perform under the contract, in that they do not dispute that they did not pay their obligations under the Note and Guaranty, and that Citizens has been damaged as a result.

That being said, however, the evidence before the court creates a question of fact when it comes to Citizens' own performance under the contract.  Citizens contends that "there is no evidence that would permit any type of inference that [Citizens] made any promise to provide construction financing in the future to the Defendants." (Doc. # 39 at 18.) Citizens emphasizes that Defendants did not submit any written evidence confirming that the alleged promise was made to Street

regarding future construction financing. (Id.)

Citizens' argument, however, completely ignores the testimony by Street regarding the promise of construction loans. More specifically, Street testified that he had an oral agreement with Citizens (via Nesbitt) that was not contained in the actual written agreement, but alluded to with the hand-written addition on the Promissory Note. Street testified that "[t]he premise of the agreement was that [Citizens] would do the construction loans as soon as [Street] did an initial amount to get the loan back into a proper appearance with their regulators and their board." (Id. at 92.) Specifically, Street testified that he "had to close [construction loans of] five lots in order to do the subsequent construction financing" from Citizens. (Id. at 67.) Street further testified that Nesbitt told him that Citizens would make the construction loans for the remaining lots. (Id. at 110.) Citizens never made the construction loans on the remaining lots, as allegedly promised by Nesbitt, and Defendants did not pay the remaining debt on the Promissory Note.

It is clear through this testimony that the issue of whether or not Citizens fully performed its part of the contract is an issue of fact for the jury. Because Citizens bears the burden of proof at trial regarding its performance under the contract, it can only meet its burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that

would entitle it to a directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Citizens has presented facts that, if believed, a reasonable jury could find that there was never any promise made to provide construction financing in the future, and therefore, that it fully performed under the Note.  The problem for Citizens, however, is that Defendants have presented facts, that if believed by a jury, controverts Citizens' contention that it fully performed under the agreement.  Accordingly, Citizen's Motion (Doc. # 39) for Summary Judgment regarding its breach of contract claim is due to be denied.

### B. Defendants' Claim of "Fraud in the Inducement"

In their Answer and Counterclaim (Doc. # 29), Defendants allege that Citizens "represented to Street that if Ridgecrest Homes purchased lots and brought in construction financing from other local bank(s) experienced in construction financing on the first five homes built (to reduce Citizens Bank's original exposure), Citizens Bank would finance construction of homes on the remaining 22 lots." (Id.) Defendants further allege that the oral representation was "undertaken with an intent to deceive Ridgecrest Homes and Street in order to induce Ridgecrest Homes to purchase the lots and take over a nonperforming loan made by Citizens Bank to the previous owner of the lots."  (Id.)

Because the alleged representation was for Citizens to make construction loans

in the future, under Alabama law, Defendants' claim is one of promissory fraud, and a [party] stating such a claim must satisfy the following six elements: (1) a misrepresentation; (2) of a material existing fact; (3) upon which the Defendants justifiably relied; (4) which proximately caused injury or damage to the Defendants; and (5) that at the time the Plaintiff made the alleged misrepresentation, the Plaintiff intended not to do the acts promised; and (6) intended to deceive the Defendants. Vance v. Huff, 568 So. 2d 745, 750 (Ala.1990); Upton v. Drummond Oil Co., Inc., 762 So.2d 373, 376 (Ala. Civ. App. 2000). "[T]he law places a heavier burden in those fraud actions where one attempts to prove fraud based on a misrepresentation relating to an event to occur in the future." Wade v. Chase Manhattan Mortg. Corp., 994 F. Supp. 1369, 1379 (N.D. Ala. 1997). "While fraud is the false representation of a material existing fact inducing reliance and causing damage . . . promissory fraud requires proof that at the time the promise was made, there was an intent not to perform the promised act." Id. (emphasis in original). "The only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future . . . is when the evidence shows that, at the time the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive." Purcell Co., Inc. v. Spriggs Enterprises, Inc., 431 So. 2d 515, 519 (Ala. 1983).

Citizens contend that, even if an alleged promise of construction loans in the future was made (which it denies), there is no evidence that Citizens made the promise with the intent to deceive or an intent to dishonor the promise. Street himself testified that he did not have any evidence of what Nesbitt knew or didn't know at the time he made the alleged promises, or that he had any evidence that what Nesbitt allegedly told him was untrue at the time. (Street Dep. at 110, 122, 124.) Instead, Street testified that all he could point to was the fact that the construction loans "didn't happen." (Id.) However, "the failure to perform, along, is not evidence of intent not to perform at the time the promise was made." Purcell Co. Inc., 431 So.2d at 519; see also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 414 (Ala. 1990); P&S Business, Inc. v. South Central Bell Telephone Co., 466 So.2d 928, 930 (Ala. 1995). In fact, Street himself testified regarding his belief that the promises made to him were sincere, but that the decision was made later not to honor the alleged promises:

> I think Mr. Nesbitt felt like he was not lying to me when he told me that they would do this [make the construction loans] to begin with. I think it was later in the process before whoever higher up that made those decisions decided they weren't going into construction loans.

(Street Dep. at 116.)

Based on the evidence in the record, the court agrees with Citizens that Defendants have failed to come forward with evidence sufficient to establish that the alleged promises made regarding the construction loans were made with the intention of not carrying out the promises, at the time the alleged promises were made.  Absent substantial evidence showing a present intent to deceive on the part of Citizens, a claim of promissory fraud cannot stand.  Street's deposition testimony clearly contradicts the allegations of promissory fraud, and after a careful review of the record, the court has not found any evidence to support Street's claim that, at the time the representations were made, Nesbitt had a present intent to dishonor them or intended to deceive Street.[7]  Therefore, summary judgment is due to be granted in favor of Citizens on Defendants claim of promissory fraud.

## V. Conclusion

In summary, the court finds that a material issue of fact remains on Plaintiff's claims of breach of contract and breach of guaranty.  Therefore, Citizens is not entitled to judgment as a matter of law as to those claims.  The court further finds that no issues of material fact remain on Defendants' claim of promissory fraud.  Therefore, Citizens is entitled to judgment as a matter of law as to this claim.  A

---

[7] The arguments hade by Defendants regarding a present intent to deceive are not supported by the evidence in the record and are otherwise unconvincing.

separate order will be entered.

**DONE** this the __4th__ day of June, 2013.

_____
SENIOR UNITED STATES DISTRICT JUDGE